```
                                                            FILED
         UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF ALABAMA                  02 JAN 30 PM 1:13
              SOUTHERN DIVISION
                                                        N.D. OF ALABAMA
```

| | |
|---|---|
| DANIEL RAY WILLIAMS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action No.: CV-01-S-2903-S |
| ) | |
| ALEXANDER HAMILTON LIFE ) | |
| INSURANCE COMPANY OF ) | |
| AMERICA, *et al.*, ) | **ENTERED** |
| ) | |
| Defendants. ) | JAN 3 0 2002 |

## MEMORANDUM OPINION

This action is before the court on plaintiff's motion to remand. Upon consideration of the pleadings, briefs, evidentiary submissions, and oral arguments of counsel, the court concludes the motion is due to be granted.

### I. STATEMENT OF FACTS

Plaintiff Daniel Ray Williams commenced this action in the Circuit Court of Jefferson County, Alabama, on June 2, 2001. On or about August 7, 1990, Williams purchased a $150,000 life insurance policy from defendant Alexander Hamilton Life Insurance Company of America ("AHL").[1] Williams alleges that he had intended to purchase — and believed in fact he had purchased — an insurance policy that would both insure his life, and, permit tax-free loans against the policy, thereby "perform[ing] as a viable investment alternative to an IRA."[2]

AHL agent Jack B. Strange sold the policy to Williams.[3] Following Strange's death in 1995,

---

[1] *See* Complaint ¶ 31. Williams also has named Jefferson-Pilot Corporation, Jefferson-Pilot Financial Group, Jefferson-Pilot Financial Insurance Company, Jefferson-Pilot Life, and America Insurance Company as defendants to this action. Motions to dismiss by various of these defendants are pending before this court, but are not considered herein. *See* Motions to Dismiss (docs. no. 12 & 13).

[2] *Id.*

[3] *Id.* Although Strange was named as a defendant to the complaint, Strange died in 1995. Plaintiff concedes that Strange was improperly joined to this action. *See* Motion to Remand ¶ 2.



defendant Michael Priestly was assigned responsibility for servicing the policy.[4] Priestly claims, however, that he never met Strange, never corresponded with Williams, and has not received any commissions for work on Williams's AHL insurance policy.[5]

Even so, Williams asserts that he learned within the two years preceding his filing of the state court action that,

> contrary to what he was told or led to believe by Alexander Hamilton, the policy has not performed as represented and loans against said policy trigger taxation thereon and that initial and annual contributions have an immediate present tax consequence.[6]

As a result, Williams — purporting to act on his own behalf, as well as representative of a putative class of allegedly similarly situated persons — sued defendants under Alabama state law for fraud, "unfair and deceptive acts," breach of the duty of good faith and fair dealing, negligent misrepresentations and omissions, breach of contract, and breach of fiduciary duty.[7]

Defendants removed the action to this court on November 14, 2001, pursuant to 28 U.S.C. §§ 1332 and 1441. Williams is a citizen of the State of Alabama.[8] Defendant Jefferson-Pilot Life Financial Insurance Company is the successor in interest by merger of defendant AHL, which no longer exists.[9] Jefferson-Pilot Life Financial Insurance Company presently is a corporation organized under the laws of the State of Nebraska, with its principal place in Nebraska,[10] but prior to June 12, 2000 it was a corporation organized and existing under the laws of the State of New

---

[4] Notice of Removal, Ex. 2 (Affidavit of Priestly) ¶ 4.
[5] *See id.* ¶¶ 3-4.
[6] *Id.* ¶ 34.
[7] Complaint, at Counts I-VI.
[8] *See id.* ¶ 2.
[9] *See* Notice of Removal ¶ 6.
[10] *See id.*

2

Hampshire, with its principal place of business in New Hampshire.[11] Defendants Jefferson-Pilot Corporation and Jefferson-Pilot Life Insurance Corporation are corporations organized and existing under the laws of the State of North Carolina, with their principal place of business in North Carolina.[12] Defendant Jefferson-Pilot LifeAmerica Insurance Company is a corporation organized and existing under the laws of the State of New York, with its principal place of business in the State of New Hampshire[13] and, prior to December 31, 2000, it was organized under the laws of the State of New Jersey, with its principal place of business in New Jersey.[14] According to defendants, there is no legal entity known as Jefferson-Pilot Financial Group. Defendant Strange was an Alabama citizen, but the parties concede that, because he is deceased, Strange was improperly joined to this action.[15] Finally, defendant Priestly is a citizen of the State of Alabama,[16] thus raising an issue of the propriety of this court's subject matter jurisdiction under 28 U.S.C. § 1332.

## II. DISCUSSION

It is a fundamental proposition that federal district courts are courts of limited jurisdiction, "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. The American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action. *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 2307, 144 L.Ed.2d 715

---

[11] *See id.*
[12] *See id.* ¶¶ 7-8.
[13] *See id.* ¶ 9.
[14] *See id.*
[15] *See id.* ¶¶ 10-11.
[16] *See id.* ¶ 12.

(1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). Federal courts are instructed to strictly construe removal statutes, and to resolve all doubts about jurisdiction in favor of remand to the appropriate state court. *See University of South Alabama*, 168 F.3d at 411.

There is no dispute as to the fact that Priestly's presence in this case destroys complete diversity among the parties, ordinarily warranting remand to the state court.[17] However, defendants allege that the inclusion of Priestly as a defendant is a sham, an inartful attempt to defeat this court's diversity jurisdiction, constituting "fraudulent joinder."[18] Defendants point to the fact that "[p]laintiff's breach of contract claim (Count V) specifically alleges a breach only by AHL ... [and] no breach of contract claim against Priestly."[19] Defendants make the same argument as to Williams's breach of fiduciary duty claim.[20] Defendants argue further that Priestly made no misrepresentations to Williams, because Priestly never had any contact with Williams.[21] Finally, defendants argue that Williams's negligence claims are time-barred, due to the fact that the "discovery rule" does not apply to claims that sound in negligence.[22]

Williams admits that he discovered the misconduct alleged in his complaint "within two

---

[17] *See* Notice of Removal ¶ 12; Motion to Remand ¶ 6.

[18] Notice of Removal ¶ 12.

[19] Opposition to Plaintiff's Motion at 3.

[20] *See id.* at 7.

[21] *See id.* at 4. Defendants also argued at this court's January 18, 2002 motion docket that Priestly was improperly joined to the action because the complaint refers only to misconduct committed at the point of the insurance policy's sale (with which Priestly was not involved), and not to any misconduct in the course of the policy's servicing. The court disagrees, and points defendants to the complaint, for example, at paragraphs 22 ("Alexander Hamilton and its agents [including Priestly] failed to timely disclose this information in a meaningful way ....," referring to the failure of the policies' promised performance "in recent years"), 25 (referring to "unsuspecting policyholders" and the premiums they paid, as distinguished from the "prospective" or "potential policyholders" referred to in paragraphs 27(a) and (c)), 26 (referring to the deceptive annual statements provided to policyholders), 27(a), (c) (described *supra*), 62 (referring to the misrepresentations on the "date of sale and every day thereafter"), and 71 (referring to defendants' failure to pay benefits promised under the policies).

[22] *See id.* at 8.

4

years of filing this complaint."[23] Williams responds to defendants, however, saying that:

> A review of the complaint and relevant facts resolves this matter. In general terms, the Complaint alleges that each agent, including Priestly, conspired with other defendants to misrepresent the insurance products and to suppress the true nature of these products, all for purpose of enriching Defendants, including Priestly, and to the detriment of Mr. Williams and others similarly situated. The argument that Priestly received no direct commissions from the sale to Plaintiff, has no bearing on his liability to Mr. Williams where he had a fiduciary duty to the Plaintiff or otherwise undertook a duty as the servicing agent for Mr. Williams. ... Priestly breached that duty by failing to keep Plaintiff apprized of the best insurance and investment product to suit his needs, among other allegations of wrongdoing.[24]

The doctrine of fraudulent joinder provides that, in a removal action, an action may be removable despite the lack of complete diversity "if the joinder of the non-diverse party ... [was] fraudulent." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Fraudulent joinder thus is an exception to the requirement that parties be completely diverse. *See id.*

Traditionally, courts have deemed a joinder fraudulent in two situations: "In a removal case alleging fraudulent joinder, the removing party has the burden of proving either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). The Eleventh Circuit identified a third type of fraudulent joinder in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996). When "a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d at 1287 (citing *Tapscott*, 77 F.3d at 1360). At issue here is the first situation: defendants argue that "there is no possibility the Plaintiff can

---

[23] Complaint ¶ 34.
[24] Motion to Remand ¶ 9.

establish a claim against the resident defendant [Priestly]."[25]

In order to determine whether a defendant has been fraudulently joined, a federal court must examine the plaintiff's pleadings at the time of the removal, although it may also consider affidavits and deposition testimony submitted by the parties. *See Pacheco De Perez*, 139 F.3d at 1380. As with a Rule 56 motion for summary judgment, courts must evaluate that evidence in the light most favorable to the plaintiff, the party opposing removal, resolving any uncertainties about the applicable laws in the plaintiff's favor. *See id.* Accordingly, defendants' burden of establishing fraudulent joinder is a heavy one; "where a plaintiff states *even a colorable claim* against the resident defendant, joinder is proper and the case should be remanded to state court." *Pacheco de Perez*, 139 F.3d at 1380 (emphasis supplied) (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)). The implication of this is that the plaintiff does not need to "have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287.

Defendants' claim of fraudulent joinder fails, then, in light of this heavy burden, and Williams's showing that the complaint states "a colorable claim against the resident defendant." *Pacheco de Perez*, 139 F.3d at 1380. Although defendants' arguments focus on Williams's breach of contract and negligence claims,[26] the court is convinced that Williams has stated a colorable claim for fraud under Alabama law. Defendant does not appear to dispute the viability of this claim.[27] Although the complaint states generally, in Count I, that plaintiffs are suing for "fraud," the court concludes that Williams's claim against Priestly amounts to one for fraudulent suppression of material facts under Alabama law.

---

[25] Opposition to Plaintiff's Motion at 3.

[26] *See supra* text accompanying notes 20-23.

[27] *See* Opposition to Plaintiff's Motion at 2.

6

The Alabama Code provides that "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala. Code § 6-5-102 (1975). According to the Supreme Court of Alabama, the elements of a fraudulent suppression claim are four in number: "(1) the suppression of a material fact (2) that the defendant has a duty to communicate (3) because of a confidential relationship between the parties or because of the circumstances of the case and (4) injury resulting as a proximate consequence of the suppression." *Liberty National Life Insurance Co. v. White*, 797 So. 2d 457, 465 (Ala. 2001); *see also Liberty National Life Insurance Co. v. McAllister*, 675 So. 2d 1292, 1296 (Ala. 1995); *Jewell v. Seaboard Industrial, Inc.*, 667 So. 2d 653, 658 (Ala. 1995). Without such a duty by Priestly to inform Williams, however, Priestly's "mere silence ... is not fraudulent." *Jewell*, 667 So. 2d at 658.

At issue here is whether Priestly had a duty to communicate to Williams that the loans Williams took on his ALH insurance policy were not tax-exempt, as Williams alleges he was told by Strange, the ALH agent who sold Williams the policy. Specifically at issue is whether a duty to communicate these facts vested in Priestly, although Williams never had any contact with Priestly regarding the insurance policy.

Such a duty may have arisen, first, by virtue of a confidential relationship between Williams and Priestly. The Alabama Supreme Court has defined "confidential relationship" to mean:

> "[A relationship in which] one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is

7

> reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another."

*Trio Broadcasters, Inc. v. Ward*, 495 So. 2d 621, 623 (Ala. 1986) (quoting *Holdbrooks v. Central Bank of Alabama*, 435 So. 2d 1250, 1252 (Ala. 1983)). Although Priestly was appointed the servicing agent for Williams's insurance policy sometime in 1996, following Strange's death, the two men never had personal contact with one another.[28] This fact does not suggest the existence of a confidential relationship as envisioned by the *Trio Broadcasters* Court.

It is possible, nevertheless, for Williams to establish that, as a consequence of the circumstances of the case, a duty arose in Priestly to inform him of the alleged tax consequences on his loans. *See White*, 797 So. 2d at 465. The Alabama Supreme Court has stated that this inquiry "necessarily requires a case-by-case consideration of several factors." *Trio Broadcasters, Inc.*, 495 So. 2d at 624.

> "A duty to speak depends upon the relation of the parties, the value [materiality] of the particular fact, the relative knowledge of the parties, and other circumstances. *Hall Motor Co. v. Furman*, 285 Ala. 499, 234 So. 2d 37 (1970).... Thus, each case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and, indeed, the words of the statute itself counsel flexibility." [*Berkel & Co. Contractors, Inc. v. Providence Hospital*], 454 So. 2d at 505, quoting *Jim Short Ford Sales, Inc. v. Washington*, 384 So. 2d 83, 86-87 (Ala. 1980). Before an obligation to disclose can be imposed under the "particular circumstances" of a case, the relationship existing between the parties, while not necessarily required to be confidential, must nonetheless be such that a disclosure of material information is dictated.

*Id.* Williams complains that ALH's

> agents misstated the benefits of the ... life insurance products and/or investments by leading Williams to believe that any loans he obtained on said policy would be non-taxable, that the policy would perform as a viable alternative investment to an IRA, and that the purchase of the product was in his best interest. ...
>
> ...

---

[28] *See supra* text accompanying note 31.

8

> Alexander Hamilton either trained and encouraged its agents not to disclose all relevant and pertinent information to policyholders when exchanges were made or withheld certain information from its agents.[29]

According to Williams, these alleged suppressions caused him to purchase the policy at issue, incurring the damages sought in the complaint.[30]

The only element that appears to be in dispute on Williams's fraud claim, then, is whether Priestly had a duty to communicate with Williams. Weighing against a finding that Priestly had such a duty is the fact that it was Strange — rather than Priestly — who sold Williams the policy, Strange who allegedly made the initial representations regarding the tax-exempt status of loans on the policy,[31] and, further, that Priestly and Williams never made contact with one another.

This court is inclined to follow the analysis of another district court within this Circuit that has considered a case on similar facts. *See Grace v. Interstate Life & Accident Insurance Co.*, 916 F. Supp. 1185 (M.D. Ala. 1996). To begin with, Priestly allegedly merely serviced the insurance policy and never had any post-sale communications with Williams.[32] The *Grace* Court found it persuasive, however, that, although the agent did not sell the policy to the plaintiff, he had been collecting premiums on the disputed policy for nine years, and had taken the policy over from another agent. *Id.* at 1189.

Similarly, Priestly was responsible for "servicing" the policy, which included sending Williams annual account statements,[33] and had been Williams's policy servicing agent for

---

[29] Complaint ¶ 45, 48. Despite defendants' objection that the complaint refers only to ALH, and not to Priestly, the court notes that, in using the term "agents," Williams explains that the term is common to the "insurance and financial instrument industry," and that he intends to make specific reference to Priestly. *Id.* at 4 n.2.

[30] *Id.* ¶ 49.

[31] *See* Opposition to Plaintiff's Motion at 7.

[32] *See* Opposition to Plaintiff's Motion at 4.

[33] *See* Motion to Remand, Ex. A. (Annual account statements); *see also* Notice of Removal (Affidavit of Mike Priestly). The court notes that these account statements reflect Williams's outstanding loan balance on the insurance policy.

approximately six years when Williams's filed suit in July of 2001. *See id.*

In addition, Williams's only other contact regarding the policy — Strange — died in 1995; following Strange's death, Williams legitimately could have expected any information regarding the tax consequences of loans he had taken on the policy to come from the only agent named on the policy — Priestly.

Further, the Alabama Supreme Court has found it convincing that

> when one party has superior knowledge of a fact that is unknown to the other party, and the lack of knowledge will induce the other party to act in a manner in which he otherwise might not act, the obligation to disclose is particularly compelling.

*McAllister*, 675 So. 2d at 1296 (citations and internal quotation marks omitted). Williams alleges that he would not have taken loans on the subject insurance policy had he known of the true tax consequences of those loans.[34]

Finally, Williams also correctly observes that, under Alabama law,

> although a person may not owe a duty to another, a duty can arise when that person volunteers to act on behalf of another. ... *This principle of law applies to insurance agents and insurance companies.*

*Palomar Insurance Corp. v. Guthrie*, 583 So. 2d 1304, 1306 (Ala. 1991) (citing cases); *see also Baldwin Mutual Insurance Co. v. Brantley*, 518 So. 2d 32, 36 (Ala. 1987) (finding that jury verdict in favor of plaintiff was supported by evidence adduced at trial that insurance agents had failed to exercise due care in servicing policy); *United States Fidelity & Guarantee Co. v. Jones*, 356 So. 2d 596, 598 (Ala. 1977). Priestly admitted in an affidavit submitted to the court that he assumed responsibility for plaintiff's insurance policy "sometime after August of 1996."[35] Williams was aware that Priestly was the new agent in charge of his life insurance policy; ALH "Statement[s] of

---

[34] *See* Complaint at Count I.
[35] Notice of Removal, Ex. 2 (Affidavit of Priestly), ¶ 4.

Account" demarcate "Mike A[.] Priestly" as the agent responsible for the policy.[36] Despite the fact that Priestly claims that he never corresponded with Williams, Alabama law would nevertheless find that Priestly had assumed a duty toward Williams once he undertook the servicing of Williams's life insurance policy. *See, e.g., Jones*, 356 So. 2d at 598 ("The law, simply stated, is that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care.") (applying the duty to an insurer). These facts suggest that Priestly had a duty to disclose material facts regarding the tax consequences of loans on the insurance policy to Williams.

Despite this prima facie showing, "[i]f the only claims against a resident defendant are barred by the statute of limitations, then there 'is no possibility the plaintiff can establish a cause of action against the resident defendant.'" *Whitlock v. Jackson National Life Insurance Co.*, 32 F. Supp. 2d 1286, 1290 (M.D. Ala. 1998) (quoting *Crowe*, 113 F.3d at 1538)). The court must determine, then, whether Williams's claims against Priestly are barred by Alabama's two-year statute of limitations for fraud actions. *See* Al. Code § 6-2-38(*l*); *see also Foremost Insurance Co. v. Parham*, 693 So. 2d 409, 417 (Ala. 1997).

Under Alabama law, the two-year statute of limitations period for fraud begins to run once the alleged victim discovered, or reasonably should have discovered, the fraud. *See id.* at 417. The victim's discovery of the alleged fraud is considered under a theory of "reasonable reliance," requiring this court to assess "all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties." *Id.* at 421. The court should consider whether these circumstances "would have put reasonable persons on notice" of the alleged fraud. *Id.*

Williams has made only the conclusory statement that he discovered the misconduct alleged

---

[36] *See, e.g.,* Motion to Remand, Ex. A (Statements of Account 8-07-1999, 8-07-2000).

in his complaint "within two years of filing this complaint."[37] The court construes this statement most favorably to Williams, however, and, further, notes that defendants make no claim that Williams's fraud claim is time-barred by the two-year statute of limitations.[38] In light of these facts, the court finds that Williams has stated a colorable claim for fraud under Alabama law and, thus, that the resident defendant has not been fraudulently joined to this action.

Accordingly, plaintiff's motion to remand this action is due to be granted. An appropriate order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 30th day of January, 2002.

_____
United States District Judge

---

[37] *Id.* ¶ 34.

[38] Defendants do make a conclusory assertion that the "'discovery rule' does not apply ... to negligence-based claims such as those made against Priestly." Opposition to Plaintiff's Motion at 8.